## STROUD v. STATE.  (No. 12859.)

Court of Criminal Appeals of Texas.  Dec. 18, 1929.

Rehearing Denied Feb. 5, 1930.

Storey, Leak & Storey, of Vernon, for appellant.

A. A. Dawson, State's Atty., of Austin, for the State.

MARTIN, J.  Offense, murder; penalty, three years in the penitentiary.

The state introduced no eyewitnesses to the killing. An undertaker and the physician who attended deceased after the fatal difficulty were introduced as witnesses, and by the physician a predicate was laid for the introduction of the dying declaration of deceased, which contains the chief incriminating facts relied on by the state for a conviction. From this we quote in part:

"After the election Stroud and I were reading the election returns and he said he would call his part of the bet off, and I told him no, we had the bet up. I told Stroud he could either pay that check or we would see who was the best man. He said, 'what are you waiting on?' and I told him to take his glasses off, and he reached up and got his glasses and said, 'They are already off,' and he cut me at the same time. I did not realize I was cut and I waded into him and hit him four or five licks, and then saw the blood running off of me. I did not have a weapon of any kind, and struck Stroud with my fist only. I had a pocket knife which was in my pocket. I did not at any time get my knife out."

The substance of appellant's testimony was that he and deceased had made an election bet; that same had been called off; that after the election deceased demanded payment and told him he was going to "whip hell" out of him if he did not turn over his check;

that deceased told him to pull off his glasses; that he did so, whereupon deceased struck him in the ear with a knife, blooding him; that deceased continued his attack with his knife, whereupon he struck him one time with a knife somewhere in the body. He further testified that he only hit him one lick, and that because he was afraid he was going to kill him; that he did this to protect himself, and he did not intend to kill him. Several eyewitnesses were introduced by appellant, who corroborated much of his testimony. It was shown the deceased died from a knife wound in his chest.

The court's charge on self-defense is under vigorous attack. Many of the objections to the charge have merit which we will not take up seriatim. A portion of the court's charge on self-defense is as follows:

"You are further instructed that, in addition to his plea of not guilty, the defendant in this case interposes the plea of self-defense, and upon this issue and as the law governing the same you are not instructed: Homicide is justifiable in the protection of the person from any unlawful and violent attack, and in such case all other means must be resorted to for the prevention of the injury, and the killing must take place while the person killed is in the act of making such unlawful and violent attack, or while the person killed is doing some hostile act, or making some hostile demonstration that would, viewed from the standpoint of the slayer, produce in his mind a reasonable fear or expectation of death or of some serious bodily injury * * * defendant would be justified in killing the deceased if it is shown to have been done to prevent the deceased from murdering or maiming him, or if it is shown that at the very time of the killing, or immediately preceding such killing, deceased had made, or was in the act of making, such hostile demonstration toward the defendant such as would produce in his mind a reasonable fear or expectation of death or of some serious bodily injury; but in that case, to justify the killing, it must reasonably appear from the acts or words, coupled with the acts of the deceased, that he intended to murder, maim, or inflict some serious bodily injury upon the defendant, and the killing must have taken place while the deceased was in the act of committing such offense, or after some act done by him showing evidently an intention to commit such offense."

■ It is apparent that this language is in part a quotation from article 1224 of the Penal Code. It is more than this, however, as it commingles the law of self-defense based upon article 1222 of the Penal Code with that based upon article 1224, P. C. These two articles are the basis for two distinct phases of self-defense, governed entirely by different rules, and can in no case be used interchangeably. They are intended to govern two entirely different states of facts. In the one homicide is permitted to prevent murder, rape, etc. (article 1222, P. C.), while in the other (article 1224, P. C.) homicide is made justifiable "in the protection of the person or property against any other unlawful and violent attack besides those mentioned, and in such cases all other means must be resorted to for the prevention of the injury," etc. It has been held in a multitude of cases that, if appellant acts under a reasonable expectation or fear of death or of serious bodily injury, produced by the acts of his adversary at the time of the homicide, he is not bound to resort to other means of averting such danger, but may slay his adversary if the danger be imminent and pressing, or if it reasonably appears so to be to defendant, viewed from his standpoint at the time. Branch's P. C. p. 1071; Hill v. State, 10 Tex. App. 618; Foster v. State, 11 Tex. App. 108; Best v. State, 61 Tex. Cr. R. 551, 135 S. W. 581. Again, "if the attack, if made at all, was made with a deadly weapon, and from defendant's standpoint at the time produced a reasonable expectation or fear of death or of serious bodily injury, it is error to charge the jury on the theory that defendant must have resorted to other means than retreat to avoid the necessity of killing his assailant." Branch's P. C. p. 1071; Ainsworth v. State, 8 Tex. App. 537; Kendall v. State, 8 Tex. App. 582; Foster v. State, 11 Tex. App. 108; Branch v. State, 15 Tex. App. 103; Gilly v. State, 15 Tex. App. 301; Cartwright v. State, 16 Tex. App. 487, 49 Am. Rep. 826; Morgan v. State, 16 Tex. App. 634; Risby v. State, 17 Tex. App. 520; Hunnicutt v. State, 18 Tex. App. 498, 51 Am. Rep. 330; Hunnicutt v. State, 20 Tex. App. 643; Williams v. State, 22 Tex. App. 497, 4 S. W. 64; Orman v. State, 24 Tex. App. 502, 6 S. W. 544; Kelly v. State, 27 Tex. App. 566, 11 S. W. 627; Baltrip v. State, 30 Tex. App. 545, 17 S. W. 1106; Cline v. State (Tex. Cr. App.) 28 S. W. 684; Shumate v. State, 38 Tex. Cr. R. 279, 42 S. W. 600; McCandless v. State, 42 Tex. Cr. R. 60, 57 S. W. 672; Casner v. State, 42 Tex. Cr. R. 124, 57 S. W. 821; Poole v. State, 45 Tex. Cr. R. 348, 76 S. W. 565; Crenshaw v. State, 48 Tex. Cr. R. 78, 85 S. W. 1147; Floyd v. State, 52 Tex. Cr. R. 104, 105 S. W. 791; Snowberger v. State, 58 Tex. Cr. R. 544, 126 S. W. 878; Anderson v. State, 60 Tex. Cr. R. 314, 131 S. W. 1124; Edwards v. State, 60 Tex. Cr. R. 326, 131 S. W. 1078; Best v. State, 61 Tex. Cr. R. 551, 135 S. W. 581; Maclin v. State, 65 Tex. Cr. R. 384, 144 S. W. 951, 953; Trevino v. State, 72 Tex. Cr. R. 91, 161 S. W. 108, 109.

■■ From the appellant's standpoint in this case there was a violent attack being made upon him with a knife in the hands of a vigorous adversary. He testified that he struck with his knife to protect himself and because he feared he would be killed. If the

character of the attack was such as to reasonably produce and did produce in the mind of appellant a reasonable expectation or fear of death or serious bodily injury, he was neither bound to retreat nor to resort to any other means before slaying his adversary. The right to slay under such circumstances has been given him by law, and this could not be abridged by requiring, as was done in the court's charge in this case, a resort by him to other means to prevent a threatened injury to himself. We regard also this charge as susceptible of construction by the jury that self-defense is to be judged from the jury's standpoint rather than appellant's. The test is not how the situation is viewed by the jury at the time of the trial, but how it reasonably appeared to the accused at the time of the killing. If, on another trial, the court charges on both phases of self-defense, above mentioned, they should be separated and particularly not charged in such way as to abridge appellant's complete right of self-defense by requiring him to resort to other means to prevent the injury. Nor should the charge be so framed as to authorize the jury to judge the situation from their own rather than from appellant's standpoint. Bazan v. State, 111 Tex. Cr. R. 320, 12 S.W.(2d) 788; Singleton v. State, 86 Tex. Cr. R. 401, 216 S. W. 1094; Carlile v. State, 90 Tex. Cr. R. 1, 232 S. W. 822.

■■ The court further charged the jury on mutual combat, and, in substance, cut off his right of self-defense, if armed with a deadly weapon he intentionally entered into a personal combat with deceased, intending at the time to use said weapon upon the deceased. The issue of mutual combat in this case is in our opinion not raised by the evidence, and the charge, being a limitation upon the right of self-defense, was reversible error. We find no testimony of witnesses to the killing that raised such issue. Their testimony rather indicates that deceased was the aggressor. If such an issue was present, it arises from the dying declaration of deceased, already quoted. This, to our minds, falls short of evidencing an agreement to fight, which must exist either expressly or by inference from circumstances. Carson v. State, 89 Tex. Cr. R. 342, 230 S. W. 997. Because two parties mutually fight or do fight does not raise this issue. Reese v. State, 49 Tex. Cr. R. 242, 91 S. W. 583; Waldon v. State, 34 Tex. Cr. R. 92, 29 S. W. 273.

■ The court's charge as a whole failed to require a finding of a specific intent to kill before a conviction for murder was authorized. This has been held indispensably necessary in cases of this character. Miller v. State (Tex. Cr. App.) 13 S.W.(2d) 865; Collins v. State, 108 Tex. Cr. R. 72, 299 S. W. 403; Hoover v. State, 87 Tex. Cr. R. 372, 222 S. W. 244; Griffin v. State, 40 Tex. Cr. R. 312, 50 S. W. 366, 76 Am. St. Rep. 718; Crow v. State, 55 Tex. Cr. R. 202, 116 S. W. 52, 21 L. R. A. (N. S.) 497; Merka v. State, 82 Tex. Cr. R. 569, 199 S. W. 1123. The killing was with a weapon not per se deadly, and a lack of intent to kill was testified to by appellant. The presence of an intent to kill was indispensably necessary, and the charge should have required the jury to so find before convicting of murder.

■ Appellant questions the admissibility of the dying declaration, claiming that no proper predicate had been laid and that such dying declaration contained inadmissible matters. The entire facts surrounding and preceding the making of this statement by deceased do not seem to have been fully developed by the state. Only the attending physician was used. It is not plainly shown that the statement was ever read over to deceased, and witnesses present, who might have given vital testimony, do not appear to have been called. Further it appears that appellant's objection to the admissibility of this was general. If there were any inadmissible portions, they have not been singled out and separated from those which appear clearly admissible. In this respect appellant's bill is defective. Jones v. State (Tex. Cr. App.) 17 S.W.(2d) 1059. We therefore do not pass on this assignment.

■ Exceptions have been lodged to the submission of the issue of self-defense as applied to aggravated assault. Without analyzing this question, we content ourselves by stating that in aggravated assault cases it is not required that an attack upon accused should be one producing expectation of death or serious bodily injury, as is the rule in homicide cases. Hix v. State, 51 Tex. Cr. R. 431, 102 S. W. 405; Forest v. State, 108 Tex. Cr. R. 159, 300 S. W. 51. These authorities are deemed sufficient to guide the trial court in the preparation of his charge on this issue upon another trial.

For the errors discussed, the judgment is reversed, and cause remanded.

PER CURIAM. The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the court.

On Request for Further Consideration.

HAWKINS, J. Appellant has filed a request that we write further regarding some of his assigned errors. An examination of our original opinion leads us to believe it sufficiently presents our views to guide the court upon another trial.

The request is denied.