MICHAEL ALVIN DUNLAVEY V. STATE.

No. 24829. June 14, 1950.
Appellant's Motion for Rehearing Denied (Without Written Opinion) October 11, 1950.

R. F. Loomis, Jr., Dallas, for appellant.

George P. Blackburn, State's Attorney, Austin, for the state.

WOODLEY, Judge.

Appellant was convicted of the offense of aggravated assault upon his wife, Louise, and the jury assessed the maximum punishment of two years in jail and a $1,000.00 fine.

Louise Dunlavey received severe burns which she testified were inflicted upon her without provocation by appellant with an electric iron. The doctor who attended her described the burns as follows:

"I found second and third degree burns over the inner surfaces of both thighs, extending from the vulva back to the rectum on the right thigh, and on the external surface of the left thigh; she was burned on the thumb of the right hand and the little finger of the left hand; on the left wrist, left forearm; on the left ear and on the left side of her neck; there were multiple bruises over her back and shoulders and the upper arms. I think that covers it.

"A second degree burn is where the burn is through both layers of the skin; a third degree burn is where the tissue itself is involved, burned. A third degree burn is worse than a second degree burn."

Fourteen-year old Billy Ray Walden testified that after the difficulty he heard appellant say that "he would have ironed her from her head to her feet if she hadn't jumped up."

Appellant testified as a witness in his own behalf, and offered witnesses who testified to his good reputation as a peaceable and law-abiding citizen.

His version of the affair was that he was lying on the bed reading, and his wife attacked and burned him with the iron; that in defending himself against such attack they both sprawled on the floor and were burned by coming in contact with the iron which had been dropped; that his wife had rolled over and had lain on the loose iron.

Appellant further testified that he acted only to prevent his wife from burning him again; that during the difficulty his wife cursed him and said, "I'll shut your eyes and mouth forever," and later said, "The next time I will catch you asleep and I will finish the job."

Appellant also testified, "I did not * * * intend to injure her. I was in fear for my person, Yes Sir. I did feel like she would carry out the threats to harm me, Yes Sir. * * * I was trying to keep her from burning me again."

Louise Dunlavey testified that following the assault on her by appellant with the hot iron, she attempted to call the police, and was again assaulted by appellant with his fist. She was corroborated as to such last assault by the Walden boy. Appellant, however, denied that he struck his wife, but claimed that he merely held her hand in order to prevent her using the telephone.

The trial court submitted to the jury appellant's right of self-defense, and instructed the jury, in part: "that when a person is attacked by another, and there is created in the mind of the person so attacked a reasonable expectation or fear of death *or bodily injury, or of any unlawful violence to his person,* then, the law excuses or justifies such person so attacked in resorting to any means at his command that reasonably appeared to him to be necessary, viewed from his standpoint at the time, to prevent his assailant from taking his life or inflicting upon him serious bodily injury, *or to prevent any unlawful violence to his person whatsoever*: * * *."

And in applying the law to the facts the court instructed the jury that if "viewed from the standpoint of the defendant under all the facts and circumstances within his knowledge, it reasonably appeared to him that his life or person was in danger and there was created in his mind a reasonable expectation or

fear of death or serious bodily injury, *or any unlawful violence to his person,*" appellant should be acquitted.

The court's charge also contained the following paragraph:

"You are further instructed that the right of self-defense commences when the necessity begins and ends when the necessity ceases, *viewing it as it appeared to him from his standpoint at the time.*"

Appellant's lone exception to the charge is addressed to such paragraph last quoted, the exception being "on the grounds that it is superfluous and should be excluded and does not state the law applicable to this case, in that it limits and prejudices the defendant's rights."

The trial court overruled such exception, and refused to give the charge requested by appellant, which is relied upon by appellant as reversible error.

We are not in accord with appellant's contention made in brief and argument that such last quoted paragraph of the charge does not take into consideration apparent danger. The concluding provision is that the matter must be viewed as it appeared to appellant.

The requested charge is in two paragraphs. In paragraph 1, appellant sought to have the jury instructed as to the right of defense against an attack less than deadly. The requested charge contains the condition that "in such case all other means reasonably proper or effective under the circumstances must be resorted to for the prevention of injury, before the assault."

Art. 1224, Vernon's P.C., justifies a homicide in defense against a milder attack, such justification being qualified by a provision, among others, that all other means must be resorted to for the prevention of the injury before killing the aggressor.

This is a misdemeanor case, the charge being aggravated assault, and homicide not being involved.

In his charge to the jury, the court gave to appellant the unqualified right of self-defense against the claimed assault, whether of a nature involving apprehension of death or serious bodily injury, or "of any unlawful violence to his person."

The requested charge would have added nothing to appel-

lant's right of defense. On the other hand, it would have burdened his right of self-defense with qualifications not found in the court's charge nor in the law.

In defending against an attack less than deadly, one is not required to resort to other means before making an assault. His right to kill the aggressor does not exist, however, unless he has fulfilled the conditions of Art. 1224, P.C., one of such conditions being resort to other means before killing the aggressor.

The second paragraph of the requested charge deals with apparent danger as justifying an assault in defense therefrom, and directs attention to the fact that in determining whether or not danger existed, the appearance must be viewed from appellant's standpoint alone.

Such appearance of danger as viewed from appellant's standpoint alone was sufficiently submitted to the jury in the court's charge in the above-quoted paragraphs, as well as in other parts of the charge.

Appellant in his brief directs our attention to the case of Stroud v. State, 113 Tex. Cr. R. 621, 24 S.W. (2d) 52, where is found this statement referring to Arts. 1222 and 1224, P.C.: "These two articles are the basis for two distinct phases of self-defense, governed entirely by different rules, and can in no case be used interchangeably. They are intended to govern two entirely different states of facts."

We think that the phrase "in no case" should be confined to the character of case before the court, and that mentioned in the article, that is, a case involving homicide.

While it is true that the full right of self-defense exists in an assault not resulting in or intended to cause death, the reason for separately submitting the contents of the two articles does not exist, to the same extent at least, as in a case where a killing was intended or resulted.

We are not here dealing with an exception complaining that the court, in jointly submitting these two phases of self-defense, has qualified or restricted appellant's right of self-defense against an attack giving rise to apprehension of death or serious bodily injury such as by charging on the use of excessive force. If that character of complaint was before us, or if a homicide was involved, the cited case would be applicable.

The trial court here having fully informed the jury of appellant's right to defend against the claimed assault "to prevent any unlawful violence to his person whatsoever," he is in no position to complain that the court refused to qualify such defense by a requirement that he must first resort to other means.

The evidence is sufficient to sustain the conviction. It was within the province of the jury to determine the punishment.

No reversible error appearing, the judgment is affirmed.

Opinion approved by the court.