

FILED
October 4, 2016
Third Court of Appeals
Jeffrey D. Kyle
Clerk

ACCEPTED
03-14-00531-CR
11673895
THIRD COURT OF APPEALS
AUSTIN, TEXAS
7/18/2016 9:09:29 AM
JEFFREY D. KYLE
CLERK

No. 03-14-0531-CR

IN THE
COURT OF APPEALS
FOR THE THIRD JUDICIAL DISTRICT
OF TEXAS, AT AUSTIN

RECEIVED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
7/18/2016 9:09:29 AM
JEFFREY D. KYLE
Clerk

**DERRICK KUYKENDALL**
Appellant
v.
**The State of Texas**
Appellee

On Appeal In Case Number D1DC-13-300701
From the 147[ST] District Court of Travis County
The Hon. Bert Richardson, Judge Presiding

# MOTION FOR RE-CONSIDERATION

# EN BANC

Submitted by:

The Law Offices of Ariel Payan
1012 Rio Grande
Austin, Texas    78701
Tel.   512/478-3900
Fax:   512/472-4102

**Ariel Payan**
State Bar No. 00794430

Court-Appointed Attorney for Appellant

# Table of Contents

Index of Authorities ................................................................................................................ii

Point of Error............................................................................................................................v

Facts Relevant to this Motion.................................................................................................. 1

Prayer...................................................................................................................................14

Certificate of Delivery .........................................................................................................15

i

# Index of Authorities

**Federal Cases:**

Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189 (1932)......................................................6

United States v. Powell, 469 U.S. 57, 68–69, 105 S.Ct. 471 (1984) ............................................6

**Texas Cases:**

Bell v. State, 148 Tex.Cr.R. 573, 189 S.W.2d 1022 (1945) ..........................................................4

Dockery v. State, 542 S.W.2d 644 (Tex.Cr.App. 1976) ...........................................................12

Giles v. State, 617 S.W.2d 691 (Tex.Cr.App. 1981)..................................................................12

Guthrie-Nail v. State – S.W.3d –, 2015 WL 5449642, PD-0125-14 (Tex.Cr.App.   September 16, 2015).................................................................................................................................5, 6

Guzman v. State, 188 S.W.3d 185, 188 (Tex.Cr.App. 2006) ......................................................8, 9

Howard v. State, 420 S.W.2d 706 (Tex.Cr.App. 1967) ................................................................4

Lafleur v. State, 106 S.W.3d 91, 92 (Tex.Cr.App. 2003) ...................................................... 3, 5, 7

Lewis v. State, 529 S.W.2d 550, 553 (Tex.Cr.App. 1975) ......................................................9, 11

London v. State, 547 S.W.2d 27 (Tex.Cr.App. 1977)..........................................................12

Lugo v. State, 667 S.W.2d 144, 147 (Tex.Cr.App. 1984) ........................................................8, 9

Mendieta v. State, 706 S.W.2d 651, 653 (Tex.Cr.App. 1986)........................................................9

Moore v. State, 574 S.W.2d 122 (Tex.Cr.App. 1978) ......................................................11

Ormsby v. State, 600 S.W.2d 782 (Tex.Cr.App. 1980) ......................................................11

Polk v. State, 693 S.W.2d 391, 394 (Tex.Cr.App.    1985) ......................................................6, 7

Roberts v. State, 122 S.W. 388 (Tex.Cr.App. 1909)......................................................4

Saunders v. State, 840 S.W.2d 390, 391 (Tex.Cr.App. 1992)......................................................8

Schoelman v. State, 644 S.W.2d 727 (Tex.Cr.App. 1983) ......................................................12, 13

Thomas v. State, 638 S.W.2d 905, 907 (Tex.Cr.App.    1983) ......................................... 4, 5, 12

Trujillo v. State, 227 S.W.3d 164, 168 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd).............9

Weatherford v. State, 21 S.W. 251 (Tex.Cr.App. 1893)...................................................................4

## Texas Statutes / Codes:

Tex. Gov't.Code Ann. § 508.145(d)....................................................................................3

Tex. Pen.Code Ann. § 19.05(a)........................................................................................9

Tex. Penal Code sec. 6.03(d)...................................................................................... 11-13

Tex.Code Crim. Proc. Ann. art. 36.13 ..............................................................................4

Tex.Code Crim. Proc. Ann. art. 38.04.   ...........................................................................4

Tex.Code Crim. Proc. Ann. art. 42.12 ..............................................................................3

Tex.Code Crim. Proc. Ann. art. 42.12 § 3g (a)(2) ..........................................................3

## Point of Error

The following are the points upon which this motion is predicated:

THE TRIAL COURT ERRED IN FAILING TO PROPERLY INSTRUCT THE JURY REGARDING THE SPECIAL ISSUE OF A DEADLY WEAPON AND SUCH WAS HARMFUL TO APPELLANT

THE TRIAL COURT ERRED IN FAILING TO PROPERLY INSTRUCT THE JURY REGARDING THE LESSOR INCLUDED CHARGE OF CRIMINALLY NEGLIGENT HOMICIDE AND SUCH WAS HARMFUL TO APPELLANT

No. 03-14-0531-CR

IN THE
COURT OF APPEALS
FOR THE THIRD JUDICIAL DISTRICT
OF TEXAS, AT AUSTIN

**DERRICK KUYKENDALL**
Appellant

v.

**The State of Texas**
Appellee

On Appeal In Case Number D1DC-13-300701
From the 147ST District Court of Travis County
The Hon. Bert Richardson, Judge Presiding

# MOTION FOR RE-CONSIDERATION

# EN BANC

TO THE HONORABLE JUDGES OF THE THIRD COURT OF APPEALS:

COMES NOW, Appellant in the above styled and numbered cause, by and through

counsel Ariel Payan, and respectfully files this "Motion for Re-Consideration En Banc," filed

pursuant to Tex.R.App.Pro. 49.7, and would show the Court as follows:

1

## Facts Relevant to this Motion

This Court handed down an opinion in this cause on April 28, 2016.

## Summary of the Argument

The following is a brief summary of the argument presented in this motion:

The defense requested a lawful and timely charge. The trial judge erred in failing to include it. Giving a written instruction to the jury on the issue of a deadly weapon is the preferred method of presenting this issue. When a party makes a timely request for a lawful and necessary instruction, the trial court commits error in failing to give it.

The testimony presented at trial was sufficient to raise the issue of criminally negligent homicide, and the trial judge erred in not giving the requested instruction. The Court's opinion ignores that the evidence can be viewed in two ways. The instruction should have been given so that the jury had the option to decide.

THE TRIAL COURT ERRED IN FAILING TO PROPERLY INSTRUCT THE JURY REGARDING THE SPECIAL ISSUE OF A DEADLY WEAPON AND SUCH WAS HARMFUL TO APPELLANT

This Court's opinion held that the jury had to make an 'express' finding of a deadly weapon in this case. "Therefore, by finding Kuykendall guilty of manslaughter, the jury expressly found that he had used or exhibited a deadly weapon." Citing Lafleur v. State, 106 S.W.3d 91, 92 (Tex.Cr.App. 2003). Slip op at 3. This Court's opinion, therefore, relies upon the precept that there could be no other possible finding, due to the jury's verdict.

The entry of a deadly weapon in a judgment not only curtails a trial court's ability to order community supervision, it also affects a defendant's eligibility for parole. Section 508.145(d) of the Texas Government Code states that "an inmate serving a sentence ... for an offense for which the judgment contains an affirmative finding under Section 3g(a)(2) of [Article 42.12, Code of Criminal Procedure]" must serve a longer period, without consideration of good conduct time, before he may be released on parole. Tex. Gov't.Code Ann. § 508.145(d). For a trial court to enter a deadly-weapon finding in the judgment, the trier of fact must first make an "affirmative finding" to that effect. Tex.Code Crim. Proc. Ann.

art. 42.12 § 3g (a)(2). A defendant convicted of manslaughter is not automatically subjected to parole or probation limitations. See Tex.Code Crim. Proc. Ann. art. 42.12. Therefore, a deadly weapon finding has a substantial impact on the sentence a defendant serves.

The law in Texas has always been that once a jury has been selected as the fact finder, the law relies upon them 'exclusively' as a body to make all the necessary findings in a case. Article 36.13, V.A.C.C.P., provides:

> Unless otherwise provided in this Code, the jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby.

Tex.Code Crim. Proc. Ann. art. 36.13. Further, Article 38.04, V.A.C.C.P., provides:

> The jury, in all cases, is the exclusive judge of the facts proved, and of the weight to be given the testimony, except where it is provided by law that proof of any particular fact is to be taken as either conclusive or presumptive proof of the existence of another fact, or where the law directs that a certain degree of weight is to be attached to a certain species of evidence.

Tex.Code Crim. Proc. Ann. art. 38.04. It has long been said that the jurors are the exclusive judges of the facts proved, Weatherford v. State, 21 S.W. 251 (Tex.Cr.App. 1893), or the issues of facts, Roberts v. State, 122 S.W. 388 (Tex.Cr.App. 1909). It is frequently said that the jury is the exclusive judge of the facts, credibility of the witnesses, and weight to be given to the testimony. See, e.g., Howard v. State, 420 S.W.2d 706 (Tex.Cr.App. 1967). Texas

4

courts have long held that fact issues must be submitted to the jury. Bell v. State, 148 Tex.Cr.R. 573, 189 S.W.2d 1022 (1945).

Whether a firearm was used in the commission of an offense, is a fact issue to be decided by the trier of the facts. Thomas v. State, 638 S.W.2d 905, 907 (Tex.Cr.App. 1983). When the jury is the trier of the facts an "affirmative finding" as to whether a firearm was used or exhibited during the commission of the offense, said finding must be made by the jury, not by the trial judge. Id. The Thomas Court stated:

> If the Legislature had intended for the trial court to make such an "affirmative finding," a determination of a fact issue, in a case where the jury was the trier of the facts, it could have easily provided for such determination to be made by the trial court. It did not do so, and we cannot say the Legislature intended to overrule the provisions of Articles 36.13 and 38.04, V.A.C.C.P.

Thomas, 638 S.W.2d at 907. It is the fact finders duty to make the finding, when a fact finder is not given that option there are other methods for the court's to make a determination post trial, (see Lafleur v. State, 106 S.W.3d 91 (Tex.Cr.App. 2003)), but when a party requests the finding the trial judge should give it. This Court's finding relies on the assumption that no other possible conclusion could have been reached by a jury in this case, and therefore the trial judge's actions were justified in refusing the requested instruction.

In Guthrie-Nail v. State – S.W.3d –, 2015 WL 5449642, PD-0125-14 (Tex.Cr.App. September 16, 2015), the Court of Criminal Appeals was faced with an issue of whether or not

5

a fact finding could refuse to make a finding of a deadly weapon in a case of murder. The Court held that the fact finder could make this 'inconsistent finding,' and that the law does not bar inconsistent verdicts. The Court stated:

> If a deadly-weapon special issue is submitted to a jury, the jury may answer that issue "no" even in a case in which use of a deadly weapon is a necessary element of the offense. Such a result in a jury trial would be internally inconsistent, but the law does not bar inconsistent verdicts.

Guthrie-Nail, –S.W.3d at –, (citing United States v. Powell, 469 U.S. 57, 68–69, 105 S.Ct. 471 (1984); Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189 (1932)). A fact finder can make a finding that is inconsistent with a verdict. This jury could have done so, and was denied that ability by the trial judge's failure to instruct when properly requested by the defense.

In Polk v. State, 693 S.W.2d 391, 394 (Tex.Cr.App. 1985), the Court of Criminal Appeals addressed the 'express' versus 'implied' findings of a deadly weapon. The Court held that the trial court's entry of a deadly-weapon finding was not express even though the jury could have determined that the defendant had used a deadly weapon by committing an attempted murder. The State argued that the finding of guilt meant the jury necessarily made an affirmative finding of use or exhibition of a deadly weapon or firearm, but the Court rejected those arguments because they amounted to implied findings. The Court held that a

6

trial judge could not properly enter an affirmative finding concerning the defendant's use or exhibition of a deadly weapon or firearm during the commission of the offense unless the case fit into one of the listed scenarios. The focus of Polk is to remove these 'implied' findings, when a party properly requests a deadly weapon special finding, it should be given to the jury.

The Polk Court reached this conclusion by first defining 'affirmative finding'.

> Affirmative is defined as ... that which avers a fact to be true; that which establishes. Black's Law Dictionary 55 (5th ed. 1979). Finding is defined as: [t]he result of the deliberations of a jury or a court. A decision upon a question of fact reached as the result of a judicial examination or investigation by a court [or] jury.... Black's Law Dictionary 569 (5th ed. 1979). We have searched the legislative history of Article 42.12, supra, and have determined that, given the previous definitions, these words taken together were intended to mean the trier of fact's *express* determination that a deadly weapon or firearm was actually used or exhibited during the commission of the offense.

Polk, 693 S.W.2d at 393. [Emphasis in original]. The impetus of the Polk decision was to remove the ambiguity and inconsistency of an 'implied' finding, where the appellate courts have to go back and fix and or clarify what was done at trial. Appellate courts have come full circle. Lafleur makes it permissible for reviewing courts to make a deadly weapon finding when the litigants fail to request an instruction. The Lafleur Court recognized that this was not the 'preferred method.' An instruction for a special finding of a deadly weapon in a murder case is not an unlawful instruction, indeed it is the preferred method. See Lafleur

7

v. State, 106 S.W.3d 91, 92 n.6 (Tex.Cr.App. 2003)[1]. Here the defense requested an instruction and was denied.

This Court's opinion noted: "Moreover, Kuykendall has not cited any authority, and we are not aware of any, holding that a defendant is entitled to have the trial court submit the deadly-weapon question to the jury as a special issue." Slip op., at 3. Indeed, appellate counsel has been unable to find anything that says you have to in this instance, how simple life would be. Appellant believes that it would certainly make the law easier and cleaner to follow and understand if there was a bright line rule that so required, but this is not the Court for such sweeping directives, nor is it likely that the political will exists to 'clarify' things so. But, when a litigant makes a request for a lawful, appropriate, timely instruction, that complies with the law and does not confuse the issues before it, a trial judge should give the instruction, and failure to do so is error.

---

[1]   The Court stated:
We do not suggest that reference to the application paragraph is the sole method, or even a preferred method, for making a deadly weapon finding when a person is convicted of a lesser-included offense. There is much merit in Judge Price's preference for a special Cdeadly weaponC issue. That is a commendable practice. We hold only that a trial judge has the authority to enter a deadly weapon finding based upon express Cdeadly weaponC language in the application paragraph of a lesser-included offense.

THE TRIAL COURT ERRED IN FAILING TO PROPERLY INSTRUCT THE JURY REGARDING THE LESSOR INCLUDED CHARGE OF CRIMINALLY NEGLIGENT HOMICIDE AND SUCH WAS HARMFUL TO APPELLANT

A defendant is entitled to an instruction on a lesser-included offense if (1) the lesser offense is a lesser-included offense of the charged offense and (2) there is some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense. Guzman v. State, 188 S.W.3d 185, 188 (Tex.Cr.App. 2006). A reviewing court should look at all the evidence presented at trial to make this determination. Lugo v. State, 667 S.W.2d 144, 147 (Tex.Cr.App. 1984).

Criminally negligent homicide is a lesser included offense of murder. See Saunders v. State, 840 S.W.2d 390, 391 (Tex.Cr.App. 1992); Lugo, 667 S.W.2d at 147. The issue then is whether there is some evidence from which the jury rationally could have found that, if Appellant was guilty, he was guilty only of the lesser offense of criminally negligent homicide. See Guzman, 188 S.W.3d at 188.

Criminally negligent homicide involves causing the death of another by criminal negligence. Tex. Pen.Code Ann. § 19.05(a). Criminal negligence involves inattentive risk creation. Lugo, 667 S.W.2d at 147–48; Lewis v. State, 529 S.W.2d 550, 553 (Tex.Cr.App. 1975). The focus of criminal negligence is the failure of the actor to perceive the risk created

9

by *his conduct*. Trujillo v. State, 227 S.W.3d 164, 168 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd)[Emphasis added]. Before a charge on criminally negligent homicide is required, the record must contain evidence showing an unawareness of the risk. Mendieta v. State, 706 S.W.2d 651, 653 (Tex.Cr.App. 1986). This is determined by looking at the evidence presented to find if the defendant was unaware of the risk of death based on the risk created by his conduct. Id.

Appellant testified that he was trying to scare away his attacker by firing a warning shot into the air. He described the shooting initially as:

A. I'm trying to back up, and I just tried to give a warning shot, but when I gave a warning shot --

Q. You got a warning shot?

A. I tried to give a warning shot. He just kept coming. I don't even remember shooting the second time. I don't -- I don't remember shooting two times. I just remember trying to give a warning shot. Get away.

R.R. Vol. 8, pg. 62. Appellant testified that he had never shot a gun before that night.

Q. Had you ever shot a gun before that night?

A. No, ma'am.

R.R. Vol. 8, pg. 64. When asked to describe the event in more detail Appellant testified:

10

Q.      You said you fired off what you were intending to be a warning shot, and you don't even remember that second shot. Did it seem like one shot to you?

A.      That's what I thought. I didn't even know it was two shots.

Q.      Did you aim that weapon, [Appellant]?

A.      No, ma'am. I barely -- I barely got -- I didn't even have time to aim. I just took it out of my pocket and shot. I probably could have shot myself. I didn't have time to aim.

R.R. Vol. 8, pg. 66.    When asked about his intent during the shooting Appellant stated:

Q.      [Appellant], did you want [the victim] to die that night?

A.      No, ma'am. No, ma'am.

Q.      When you fired that warning shot, what did you want to happen?

A.      I just wanted to get away from him. I didn't know. I didn't want nobody to get hurt. I just wanted to get away.

R.R. Vol. 8, pg. 66.    Appellant's testimony establishes, that he has not handled firearms in the past, he is scared and trying to get the victim away from him.   His stated actions are to fire a warning shot into the air, to get the attackers to back away from him.   His intent is not to harm anyone and fire a single shot.   He does not realize that he has fired more than one shot at the time.

11

In reviewing a defendant's contention that his requested charge on criminally negligent homicide should have been given, a reviewing court should be governed by the rule that as long as evidence from any source raises a defensive issue or raises an issue that a lesser included offense may have been committed, and a jury charge on the issue is properly requested, the issue must be submitted to the jury. Ormsby v. State, 600 S.W.2d 782 (Tex.Cr.App. 1980); Moore v. State, 574 S.W.2d 122 (Tex.Cr.App. 1978). The credibility of the evidence and whether it is controverted or conflicts with other evidence may not be considered in determining whether such a charge should be given. Moore, supra.

V.T.C.A. Penal Code, Sec. 6.03(d) defines criminal negligence as:

> A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances *as viewed from the actor's standpoint.*

Tex. Penal Code sec. 6.03(d)[Emphasis added].   The difference between criminally negligent homicide and involuntary manslaughter is the culpable mental state required to establish each offense—criminal negligence for the former and recklessness for the latter.   Lewis v. State, 529 S.W.2d 550 (Tex.Cr.App. 1975).

12

This Court noted all of these factors and discounted them as insufficient to raise the issue of criminal negligence 'on its own'. The Court goes on to cite Thomas v. State and Jackson v. State to further this belief that accidental discharge and pointing a weapon don't raise criminal negligence.

Two factors that have often been relied upon, either singly or together, as the sole basis for requiring a charge on criminally negligent homicide are whether a defendant pointed a loaded gun at another and whether the weapon accidentally discharged. Schoelman v. State, 644 S.W.2d 727 (Tex.Cr.App. 1983); Giles v. State, 617 S.W.2d 691 (Tex.Cr.App. 1981); London v. State, 547 S.W.2d 27 (Tex.Cr.App. 1977); Dockery v. State, 542 S.W.2d 644 (Tex.Cr.App. 1976) (opinion on rehearing). For many years these two facts were held to be virtually dispositive of whether sufficient facts existed to warrant a charge on the issue. But every case in which someone points a loaded gun at another does not require that a charge on criminally negligent homicide be given. Thomas v. State 699 S.W.2d 845, 850 (Tex.Cr.App. 1985). Nor does the allegation of accidental discharge necessarily raise the issue. The attendant circumstances from which the defendant's mental state can be inferred must be collectively examined in light of the definition of criminally negligent conduct. See Tex. Penal Code, Sec. 6.03(d).

13

A defendant may be shown to be guilty only of the lesser offense if the evidence presented is subject to different interpretations. In Thomas, 699 S.W.2d at 851, the Court held that if the evidence raises two inferences regarding the defendant's awareness of the risk, then the jury should be instructed on both inferences, citing Schoelman v. State, 644 S.W.2d 727 (Tex.Cr.App. 1983).

Here Appellant testified that he had no intent to kill or injure anyone, no one asked him if he knew or was aware of the risk inherent in firing a weapon in 'a crowded parking lot' even if the intent was to fire in the air.[2] His stated intent was to fire into the air, and not into a crowd. This intent is sufficient to show that his actions could be interpreted as criminally negligent in that he should have been aware of the substantial risk of firing a weapon, but since his stated intent was to fire into the air and not *at anyone*, he disregarded this risk. The reviewing court is to look from the perspective of the actor, versus the result of the conduct. Tex. Penal Code 6.03(d). Discharging a firearm is an inherently dangerous act, yet it is done

---

[2] "Furthermore, undisputed evidence established that Kuykendall was aware that firearms are dangerous because he had known victims of gun violence and had himself been seriously injured by a firearm." Slip op., at 6. In this era of rampant gun violence and expansive media coverage, knowledge of the dangers of a firearm can be imputed to anyone, and should not be used as a dispositive factor. It is knowledge of the particular firearm that the Thomas Court and others have looked to. Had he ever fired that weapon, was he familiar with it, and its idiosyncracies, did he know it was loaded? Those are the issues that have merit in determining an actor's knowledge.

14

thousands of times a day throughout this country.    Firing a weapon into the air is not safe, but it does not carry the intent of firing it at someone.    There is no direct evidence that shows that he was aware of the risk of firing the weapon into the air, the circumstantial evidence the Court cites can be interpreted in more than one way, and as such the requested instruction was required.

Prayer

WHEREFORE, PREMISES CONSIDERED, Appellant in the above styled and numbered cause respectfully prays that this Court sitting En Banc    reconsiders the original opinion handed down by the panel in this cause and grant him any and all relief to which he is entitled.

Respectfully submitted,

**ARIEL PAYAN**
Attorney at Law
1012 Rio Grande
Austin, Texas    78701
Tel.    512/478-3900
Fax: 512/472-4102
Arielpayan@hotmail.com

by:            /s/ Ariel Payan
**Ariel Payan**
State Bar No. 00794430

15

Attorney for Appellant

## Certificate of Compliance

I hereby certify pursuant to T.R.A.P. 9.4(i)(3), the word count for this document, as determined by the word processing program is ____3283_____ .

____/s/ Ariel Payan_____

**Ariel Payan**

## Certificate of Delivery

This is to certify that a true and correct copy of the above and foregoing "Motion for Re-Consideration En Banc" was electronically delivered to the   office of the District Attorney of Travis County, Texas at appellateTCDA@traviscountytx.gov; and to Appellant on July 17, 2016.

/s/ Ariel Payan

Ariel Payan